TERRITORY, respondent, v. MANTON, appellant.

*Murder by neglect.* — An indictment which charges in substance that the defendant was the husband of the deceased woman, and as such owed her the duty of protection; that deceased was weak, sick, feeble, and unable to walk; that the defendant had the ability to take care of his said wife, but that he left her exposed in the night-time to the cold and inclemency of the weather, refusing to provide her with clothing and shelter, and did this feloniously, willfully, purposely, premeditatedly, and of his malice aforethought; and that she "languishing of such exposure, leaving, and of such neglecting, omitting and refusing to provide clothing and shelter," did die, and that thus the defendant feloniously, purposely, premeditatedly, and of his malice aforethought, did kill and murder her, — is good as charging a felonious homicide.

*The degree of felonious homicide is sufficiently charged in the indictment.* — *Held*, that it is not necessary to inquire whether this indictment charges murder in the first degree for the reason that the defendant was acquitted thereof, but that, under section 18, division 4, Revised Statutes of Montana (sec. 18, div. 4, Comp. Stats. Mont.), it at least charges murder in the second degree. *Territory* v. *McAndrews*, 3 Mont. 158, and *Territory* v. *Stears*, 2 Mont. 324, cited.

*Instructions must be applicable.* — Instructions that contain correct abstract propositions of law, but which are inapplicable to the facts shown by the evidence, are erroneous.

*Instructions that presume guilt are erroneous.* — In the case at bar the court gave the following instruction: "If the jury have a reasonable doubt whether the defendant has been proved by the evidence guilty of murder in the first degree, they should find him guilty in the second degree, if the jury find him guilty of murder"; and also the following: "If the jury have a reasonable doubt after considering the evidence as to whether or not the defendant is guilty of murder in the second degree, they should find him guilty of manslaughter." *Held*, that the giving of these two instructions together was manifest error.

*Appeal from District Court, Deer Lodge County*

F. W. COLE and H. R. WHITEHILL, for the appellant.

The indictment does not state a public offense.. The words " feloniously, willfully, purposely, premeditatedly, and of his malice aforethought," do not of themselves describe murder, unless they are applied to acts which make up that crime. Malice arises from an evil purpose; negligence from a failure of purpose. Malice is a defect of the heart, and negligence a defect of the intellect. 1 Wharton's Criminal Law, sec. 126; *Territory* v. *Dooley,* 4 Mont. 295. The evidence shows that the defendant is guilty of no crime whatever; that the defendant did not kill or murder Susan E. Manton, but that she came to her death by reason of her own acts. Wharton on Homicide, secs. 133, 376; *State* v. *Preslar,* 3 Jones, 421; *Hendrickson* v. *Commonwealth,* 3 S. W. Rep. 166; *United States* v. *Knowles,* 4 Saw. 516; *Territory* v. *Adolfson,* 5 Mont. 237; *Territory* v. *Rehberg,* 6 Mont. 468. Instructions should not be given which will cause the jury to consider issues on which no evidence has been introduced. *Campbell* v. *Metcalf,* 1 Mont. 379; *State* v. *Whitaker,* 12 Pac. Rep. 106. Instruction No. 35 is wholly wrong. The jury are instructed that if they have a reasonable doubt after considering the evidence as to whether or not the defendant is guilty of murder in the second degree, they shall find him guilty of manslaughter. The jury are informed in effect that the defendant, if not guilty of murder in the second degree, is guilty of manslaughter. In instruction No. 36, the jury are told in effect that, in order to find the defendant not guilty, if defendant killed the deceased, they must find beyond a reasonable doubt that he did so lawfully, thus requiring the defense to be· proved beyond a reasonable doubt. *Territory* v. *Edmonson,* 4 Mont. 141. It is submitted that the instructions given to the jury,

taken together, set up for the jury contradictory rules for their guidance, are inherently defective and calculated to confuse and mislead. *Territory* v. *Owings,* 3 Mont. 137, and cases cited.

D. M. DURFEE, county attorney, and ROBINSON & STAPLETON, for the respondent.

The indictment charges that the defendant omitted, feloniously, willfully, purposely, premeditatedly, and with malice aforethought, to care for his wife and provide her necessary shelter. Death ensuing from the willful omission of duty is murder, and when the indictment so charges, it is sufficient. See Wharton's Am. Crim. Law, sec. 1011; *Lewis* v. *State,* 5 Am. Crim. Rep. 382; Wharton on Homicide, sec. 134. As to the competency of testimony to show malice. *Williams* v. *State,* 5 Am. Crim. Rep. 512. Courts are careful in disturbing a verdict upon the ground of insufficiency of evidence. Hilliard on New Trial, 340–350. Instructions Nos. 5, 6, and 7, complained of by the appellant, are merely definitions of lawful homicide, and certainly could not mislead the jury. Acts of brutality towards a deceased person are admissible to show malice. *Williams* v. *State,* 5 Am. Crim. Rep. 512. That the jury were not misled by instruction No. 35 is evidenced by their verdict of murder in the second degree.

THE opinion states the case.

McCONNELL, C. J. The appellant in this case was tried at the April term, 1887, of the district court for Deer Lodge County, and convicted of murder in the second degree, and sentenced to twenty years' imprisonment. He moved in arrest of judgment and for a new trial, which motions were overruled, and he has appealed in error to this court. There are various specifications

of error, many of which we do not deem it necessary to notice.

1. The motion to arrest the judgment was predicated upon the ground that the indictment does not show that any criminal offense at all was committed. The charging part of the indictment is as follows, to wit: "The grand jury of the said county, duly drawn, impaneled, sworn, and charged to inquire into public offenses committed in the said county, upon their oaths do present and say that one Dennis Manton, late of the county of Deer Lodge, Montana Territory, on or about the second day of March, A. D. 1887, was then and there, at the county of Deer Lodge and territory of Montana, the husband of one Susan E. Manton, and that it then and there became and was the duty of the said Dennis Manton, as the husband of the said Susan E. Manton, to protect and defend her, the said Susan E. Manton, from the cold and inclemency of the weather, and he, the said Dennis Manton, then and there had the means to provide the same, and she, the said Susan E. Manton, was then and there weak, feeble, sick, and unable to walk, and he, the said Dennis Manton, did then and there feloniously, willfully, purposely, premeditately, and of his malice aforethought, leave the said Susan E. Manton in the open air, at night-time, and exposed to the cold and inclemency of the weather; and did then and there feloniously, willfully, purposely, premeditately, and of his malice aforethought, wholly neglect, omit, and refuse to protect and defend the said Susan E. Manton from the cold and inclemency of the weather, or to procure or provide any clothing, covering, or shelter whatsoever for the said Susan E. Manton, and neglecting and leaving, and omitting and refusing, to protect and defend the said Susan E. Manton from the cold and inclemency of the weather as aforesaid, and to provide and procure clothing, covering, and shelter for the body of the said Susan E.

Manton, the said Susan E. Manton did then and there languish, and then and there languishing of such exposure, leaving, and of such neglecting, omitting, and refusing to provide clothing and shelter, as aforesaid, did then and there die.  And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Dennis Manton, the said Susan E. Manton, in manner and form aforesaid, feloniously, willfully, purposely, premeditately, and of his malice aforethought, did kill and murder."

This indictment charges, in substance, that the defendant was the husband of the deceased, and as such, owed her the duty of protection; that she was weak, feeble, sick, and unable to walk; that he had the ability to take care of her, but that he left her exposed in the night-time to the cold and inclemency of the weather, refusing to provide her with clothing and shelter, and he did this feloniously, willfully, purposely, premeditatedly, and of his malice aforethought, and that she, "languishing of such exposure, leaving, and of such neglect, omitting and refusing to provide clothing and shelter," did die, and that thus the defendant feloniously, willfully, purposely, premeditately, and of his malice aforethought, did kill and murder her.  The proximate means of her death were the cold and inclemency of the weather.  These were allowed to do their work of destruction by the criminal negligence of the defendant to do the duty of protection, which he owed her as husband.  The point is made by the counsel of defendant, that this indictment charges no crime known to the law; that a husband, having the ability to protect his wife, may stand passively by, and see her sick and weak and helpless, refuse to help her, and allow her to perish under the influence of the cold and inclemency of the weather; and this negligence the result of malice, this refusal to help the product of a felonious, willful, premeditated purpose.  There is no charge of an assault

made; none that he exposed her to the inclemency of the weather; but he finds her exposed to the unpropitious elements, and he criminally leaves her there to die. If the defendant had, by his own acts, subjected her to the inclemency of the weather, there would be no doubt but that he would be guilty of murder if she had died from the exposure, and he had so subjected her unlawfully and with malice aforethought. But the question is, when he absolutely does nothing,—when the very *gravamen* of the charge is his failure to do something,—can he be guilty of murder, or manslaughter either? She perishes of cold. It is the agent which causes death. He might have prevented it, but he wickedly refuses, and lets her die. This is the question we have to consider.

Bishop, in his work on criminal law (volume 2, section 689), says, in relation to the degree of duty which renders one responsible for death in cases of neglect, that " the doctrine on this subject is that wherever there is a legal duty, and death comes by reason of any omission to discharge it, the party omitting it is guilty of a felonious homicide." In section 690, discussing the same subject, this learned author says: " If a man neglects to supply his legitimate child with suitable food and clothing, or suitably provide for his apprentice whom he is under legal obligation to maintain, and the child or apprentice dies of the neglect, he is guilty of a felonious homicide." The same author, speaking of the kinds of force by which life is taken, says that " whenever the volition, of whatever kind, put forth by one man, results in the death of another man, the former is to be charged with having committed the homicide." And it is immaterial " whether the action be of the mind or of the body; whether it operates solely or concurrently with other things; whether it was consented to by the person on whom it operated or not; whether it was an unlawful confinement, or the leaving a dependent person in a

place of exposure, or any omission of duty which the law enjoins." Sec. 682.

Under this authority, the very volition of the defendant, by which he was led to refuse aid to his wife when the law imposed the duty upon him to protect her, is transferred to the violence of the elements, and he is made to use their forces, and is responsible for the death which they immediately caused. We find the indictment good as charging a felonious homicide; but what degree of felonious homicide still remains to be decided.

The same author above quoted says: "Another illustration may be found in cases of the exposure or neglect of infants and other dependent persons. If the act is one of negligence, not clearly showing danger to the life, yet if death follows, the offense is only manslaughter; whereas if the exposure or neglect is of a dangerous kind, it is murder. Ordinarily, if a husband should withhold necessaries from his wife, and she dies, it will be only manslaughter, since this act is not so immediately dangerous to life as the other. Whether death caused by neglect is murder or manslaughter is made to depend on the nature and character of the neglect."

The Revised Statutes of Montana, page 358, section 18, provides that "murder is the unlawful killing of a human being, with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned." Tested by this definition, we think there is no doubt but that the indictment in this case charges murder. The death is charged to be the result of his felonious, willful, premeditated, and malicious conduct towards the deceased. If a man willfully abandons his wife to the destruction of the elements when he can save her, or criminally neglects to shelter her when he is able to do so, and leaves her to perish with cold, he is as much a murderer as if he had assaulted her with a deadly weapon,

and inflicted upon her a mortal wound of which she died. The statute says: "The unlawful killing may be effected by any of the various means by which death may be occasioned." The jury having acquitted the prisoner of murder in the first degree, it is not necessary to inquire whether the indictment charges that degree of crime; but it charges that the acts which caused the death were done unlawfully, and with malice aforethought, and this makes at least murder in the second degree. *Territory* v. *McAndrews*, 3 Mont. 158; *Territory* v. *Stears*, 2 Mont. 324. And the defendant having been convicted of murder in the second degree, the motion in arrest of judgment was properly overruled.

2. Another specification of error was the refusal of the court to give instruction No. 1 asked by counsel for the prisoner. Said instruction is as follows, to wit: "You are instructed that under the indictment and evidence in this case you cannot convict the defendant of the crime of murder, and the only offense that you can convict the defendant of is manslaughter; and you cannot convict him of that unless you find from the evidence that the defendant unlawfully killed or caused the death of Susan E. Manton." The effect of this instruction was to direct the jury that they could not convict of any higher offense than manslaughter, when we have just seen that the indictment charges the offense of murder. This instruction was properly refused.

3. The next specification of error is the exception taken to the instructions given upon the request of the prosecution. There are thirty-nine of them. Nos. 5, 6, 7, and 8 state the law on the subject of justifiable homicide, and as abstract propositions of law are correct, but wholly inapplicable to the facts of this case. The charge is, that the defendant killed his wife by purposely and negligently allowing her to lie out on the ice during a February night, so that she perished of the cold, and

there is not the slightest pretext in the evidence going to justify or excuse him, if he did it. If he could not help it, or did all in his power to prevent it, then there is no homicide, and no crime to be excused or justified.

Instructions Nos. 34 and 35 are as follows, to wit: " 34. If the jury have a reasonable doubt as to whether the defendant has been proved by the evidence guilty of murder in the first degree, they should find him guilty of murder in the second degree, if the jury find him guilty of murder. 35. If the jury have a reasonable doubt, after considering the evidence, as to whether or not the defendant is guilty of murder in the second degree, they should find him guilty of manslaughter." In the first of these instructions, the jury are told, in substance, that if they find the defendant guilty of murder at all, and have a reasonable doubt as to whether he is guilty of murder in the first degree, they should convict of murder in the second degree. There is no error in this. But in the next instruction they are told if they have a reasonable doubt whether the defendant is guilty of murder in the second degree or not, then they should convict of manslaughter. This is manifestly error. The effect of both instructions is to say to the jury: "You must find him guilty of one of the three degrees of felonious homicide. Try him first for murder. If you have a reasonable doubt whether he is guilty of either of these, then you should find him guilty of manslaughter." This error is so apparent that it must have been an inadvertence on the part of the learned judge who presided in the court below, made in the confusion of the trial, when he had fifty instructions in his hands for consideration. The exceptions to the instructions given for the prosecution are not properly taken. They are too general. There is no doubt but that if an exception had been taken to instruction 35 by number, pointing out the error, it would have been immediately corrected. But as our at-

tention was not called to these exceptions in the argument of the case, and as the error complained of is so material, we have decided the case upon its merits, rather than upon the insufficiency of the exceptions, as we might have done.

The ten instructions given at the request of the defendant correctly and clearly state the law, so far as they go; but the instruction given in No. 35 precludes the jury from acquitting the prisoner upon any of the grounds stated in them. It is not a sufficient answer to this error that the jury were not influenced by it, because they found the prisoner guilty of murder in the second degree, and did not come to the consideration of the question whether he was guilty of manslaughter. It is impossible to tell what influence this erroneous instruction had on the minds of the jury. It is enough to know that it is error, and might have influenced them to the prisoner's prejudice.

Let the case be reversed and remanded for a new trial.

*Judgment reversed.*

BACH, J., and McLEARY, J., concur.